**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| MARK FANSLER and LINDA GOLDSTEIN, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | C.A. No.: N17C-09-015 EMD |
| NORTH AMERICAN TITLE INSURANCE COMPANY, R. MATTHEW LONGO, LONGO & ASSOCIATES, L.P., RICHARD M. LONGO, HILLCREST ASSOCIATES, INC. and GLOBAL TITLE, INC., | ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION DENYING DEFENDANT NORTH AMERICAN TITLE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT**

Upon consideration of Defendant North American Title Insurance Company's Motion for Summary Judgment (the "Motion") filed by Defendant North American Title Insurance Company ("North American"); Plaintiffs' Opposition to North American Title Insurance Company's Motion for Summary Judgment (the "Opposition") filed by Plaintiffs Mark Fansler and Linda Goldstein (collectively, "Plaintiffs"); the Second Amended Complaint (the "Complaint"); and the entire record of this civil action, the Court will, for the reasons set forth below, **DENY** the Motion.

**FACTS**

The Motion is supported by certain exhibits, including certain deposition testimony of Mr. Fansler.[1] The Motion is not otherwise supported by an affidavit or declaration. The Opposition is supported by three exhibits and no sworn testimony or affidavit.[2] Accordingly, the

---

[1] Mot. at Exs. A-G.
[2] Opp. at Exs. P1-P3.

Court has a very limited record of documents (which may or may not be admissible) and some sworn testimony. For purposes of this decision, the Court will assume all exhibits would otherwise be admissible at a trial on the merits.

The Complaint states a single cause of action against North American. According to Plaintiffs, North American breached its obligations owed to Plaintiffs under North American Insurance Company Policy DE221-14-03064-01 (the "Policy").[3] The Policy is a title insurance policy issued with respect to a property located at 1805 Walnut Street, Wilmington, DE 19809 (the "Covered Premises"). According to the Complaint, Plaintiffs purchased the Covered Premises on July 25, 2014.[4] Plaintiffs allege that North American wrongfully denied coverage for a Covered Risk related to a lack of access to the Covered Premises.[5]

The Policy is dated as of July 25, 2014.[6] North American issued the Policy through its agent Global Title, Inc. ("Global").[7] Global is a co-defendant in this civil action. The Policy provides that Plaintiffs are the named insured and that they own the Covered Premises in fee simple.[8] Schedule A of the Policy provides a legal description of the Covered Premises.[9]

The Policy provides insurance coverage for up to $117,000 for "Covered Risks."[10] A listing of the Covered Risks is contained on the first page of the Policy.[11] Some of the seemingly relevant Covered Risks are: (i) "[t]itle being vested other than as stated in Schedule A;" (ii) "[u]nmarketable title;" and (iii) "[n]o right of access to and from the Land." The Motion fails to specify what part of the Policy is being contested as to Covered Risks, but the Court (using the

---

[3] 2d Am. Compl. at ¶¶ 26-35.
[4] *Id*. at ¶ 18.
[5] *Id*. at ¶¶ 26-29.
[6] Mot. at Ex. A.
[7] Opp. at Ex. P3.
[8] Mot. at Ex. A.
[9] *Id*.
[10] *Id*. at Ex. A (Policy Page 1 ¶¶ 1-10).
[11] *Id*.

allegations of the Complaint and the Opposition) considered these three Covered Risks to be potentially relevant.

According to Plaintiffs, Global drafted the legal description by copying "the legal description from the deed of when seller took title…."[12] The specific language of the legal description in question is:

> Together with the right, use, and privilege in common with others entitled thereto forever, including Filomena Deldeo, her heirs and assigns, of a certain 10.00 feet wide right of way adjacent to the said Northwesterly line of the former right of way of the said Railway Company and extending from the Southwesterly side of the property herein conveyed, at a width of 10.00 feet, 189.00 feet, more or less, to a point in the Northeasterly line of lands now or formerly owned by Frank P. Deldeo and Laura J. Deldeo, husband and wife.[13]

According to Plaintiffs, Global inserted this language even though Global knew the Covered Premises was landlocked and did not have a right of way easement.[14] North American submitted no evidence in support of the Motion that contradicts Plaintiffs' allegation.

In addition to Cover Risks, the Policy contains "Exceptions from Coverage" in Schedule B and "Exclusions from Coverage" at page two of the Policy.[15] North American relies on an Exception from Coverage and an Exclusion from Coverage in the Motion.[16] The relevant Exception from Coverage, in part, provides:

> This policy does not insure against loss or damage and [North American] will not pay costs, attorneys' fees or expenses that arise by reason of:
>
> * * *
>
> 5. Any discrepancies, conflicts, shortages in area, encroachments, overlaps, boundary line disputes, party walls or other matters which would be disclosed by an accurate survey and inspection of the [Covered Premises].[17]

---

[12] 2d Am. Compl. at ¶ 16.
[13] Mot. at Ex. A (Schedule A).
[14] 2d Am. Compl. at ¶¶ 15-16.
[15] Mot. at Ex. A (Schedule B; Policy Page 2).
[16] *Id*. at ¶¶ 10-13.
[17] *Id*. at Ex. A (Schedule B).

3

Exclusion 3(a) and (b), from page two of the Policy, provide:

> The following matters are expressly excluded from the coverage of this policy, and [North American] will not pay loss or damage, costs, attorneys' fees, or expenses that arise by reason of:
>
> 3. Defects, liens, encumbrances, adverse claims, or other matters
>
>    (a) created suffered, assumed, or agreed to by [Plaintiffs];
>
>    (b) not Known to [North American], not recorded in the Public Records at Date of Policy, but Known to [Plaintiffs] and not disclosed in writing to [North American] by [Plaintiffs] prior to the date [Plaintiffs] became an insured under [the Policy]….;[18]

The Policy provides that Plaintiffs are to provide North American with notice in the event of any litigation, claim of title adverse to Plaintiffs' rights to the Covered Premises or title to the Covered Premises becomes "Unmarketable."[19] The Policy also specifies that:

> If [North American] is prejudiced by the failure of [Plaintiffs] to provide prompt notice, [North American's] liability to [Plaintiffs] under the [Policy] shall be reduced to the extent of the prejudice.[20]

The Policy also provides for the means and method of the defense of title and the process of litigation.[21] In addition, Plaintiffs have a duty to cooperate with North American when there is a claim against the Covered Premises.[22]

The Agreement of Sale for the Covered Premises provides certain disclosures. Paragraph 32 of the Agreement of Sale states:

> Subject to verification of right [of way] to access property, [Plaintiffs] in house counsel believes that access has already been granted but is still subject to verification. [Mr. Fansler] has had dialogue with adjacent parcel holders to grant access should it not already been granted.[23]

---

[18] *Id*. at Ex. A (Policy Page 2).
[19] *Id*. at Ex. A (Policy Page 2 "Notice of Claim to be Given by Insured Claimant").
[20] *Id*.
[21] *Id*. at Ex. A (Policy Page 3 "Defense and Prosecution of Actions").
[22] *Id*. at Ex. A (Policy Page 2 "Duty of Insured Claimant to Cooperate").
[23] *Id*. at Ex. B ¶ 32.

On or about July 24, 2015, Plaintiffs notified North American that the Covered Premises was landlocked due to survey mistakes.[24] On September 21, 2015, Plaintiffs filed suit in the Delaware Chancery Court (the "Chancery Court Action") to obtain an easement for the Covered Property.[25]

On December 1, 2015, North American denied coverage under the Policy.[26] In denying coverage, North American contended that coverage did not exist because right of access to the Covered Premises was not being challenged.[27] Plaintiffs responded to North American on May 16, 2017, contending that North American improperly denied coverage and providing notice of the Chancery Court Action.[28] On August 16, 2017, North American responded to Plaintiffs and continued to maintain that Plaintiffs' claim was not a Covered Claim under the Policy.[29]

Plaintiffs obtained an easement to the Covered Premises in the Chancery Court Action.[30]

North American has not provided any evidence on whether, or to what extent, it suffered any prejudice due to lack of notice of the easement issue or the Chancery Court Action.

## PARTIES' CONTENTIONS

*NORTH AMERICAN'S CONTENTIONS*

In the Motion, North American contends it is entitled to summary judgment for three reasons. First, Plaintiffs' claim to access to the Covered Premises has never been "threatened, challenged or restricted." Second, Plaintiffs' claim constitutes an Exception or an Exclusion from Coverage under the Policy. Third, Plaintiffs failed to provide notice of the Chancery Court Action as required under the Policy.

---

[24] *Id*. at ¶ 3.
[25] *Id*. at ¶ 4.
[26] *Id*. at ¶ 5.
[27] *Id*.
[28] *Id*. at ¶ 6.
[29] *Id*. at ¶ 7.
[30] 2d Am. Compl. at ¶ 30.

Plaintiffs oppose the Motion. Plaintiffs argue that the Policy covers the easement issue. Plaintiffs contend that none of the Exceptions or Exclusions to coverage apply. Finally, Plaintiffs claim that they gave North American notice of the Chancery Court Action.

## DISCUSSION

*LEGAL STANDARD*

The standard of review on a motion for summary judgment is well-settled. The Court's principal function when considering a motion for summary judgment is to examine the record to determine whether genuine issues of material fact exist, "but not to decide such issues."[31] Summary judgment will be granted if, after viewing the record in a light most favorable to a nonmoving party, no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law.[32] If, however, the record reveals that material facts are in dispute, or if the factual record has not been developed thoroughly enough to allow the Court to apply the law to the factual record, then summary judgment will not be granted.[33] The moving party bears the initial burden of demonstrating that the undisputed facts support his claims or defenses.[34] If the motion is properly supported, then the burden shifts to the non-moving party to demonstrate that there are material issues of fact for the resolution by the ultimate fact-finder.[35]

---

[31] *Merrill v. Crothall-American Inc.*, 606 A.2d 96, 99-100 (Del. 1992) (internal citations omitted); *Oliver B. Cannon & Sons, Inc. v. Dorr-Oliver, Inc.*, 312 A.2d 322, 325 (Del. Super. 1973).

[32] *Id.*

[33] *See Ebersole v. Lowengrub*, 180 A.2d 467, 470 (Del. 1962); *see also Cook v. City of Harrington*, 1990 WL 35244 at *3 (Del. Super. Feb. 22, 1990) (citing *Ebersole*, 180 A.2d at 467) ("Summary judgment will not be granted under any circumstances when the record indicates . . . that it is desirable to inquire more thoroughly into the facts in order to clarify the application of law to the circumstances.").

[34] *See Moore v. Sizemore*, 405 A.2d 679, 680 (Del. 1970) (citing *Ebersole*, 180 A.2d at 470).

[35] *See Brzoska v. Olsen*, 668 A.2d 1355, 1364 (Del. 1995).

*THE FACTUAL RECORD IS INCOMPLETE*

The Court holds that the factual record is not sufficient to grant the Motion. The Court finds, as plausible, Plaintiffs' argument that the lack of access is a Covered Risk—no right of access, unmarketable title or "[t]itle being vested other than as stated in Schedule A."[36] Moreover, Plaintiffs have successfully demonstrated that factual disputes exist as to each of North American's contentions. For example, Plaintiffs point out in the Opposition that Global—North American's agent—was on notice that the property description on Schedule A was flawed.[37] Moreover, Plaintiffs contend that Global and others inhibited the surveys of the Covered Premises.[38]

The Court notes that these "factual disputes" come from representations in the Opposition; however, North American seeks summary judgment on a very limited factual record and one that mostly relies on the terms of the Policy. As presented, the Court finds that there are questions of fact as to whether the easement issue was a Covered Claim, or that the easement issue constituted an Exclusion or an Exception to coverage. As presented, Plaintiffs arguments seem strong given the purported involvement of Global in drafting Schedule A, and the alleged request of Global to Surveyor regarding a mortgage survey without requesting a boundary or land survey with corner markers or stakes.

*LACK OF NOTICE OF CHANCERY COURT ACTION*

The Court can easily dispose of North American's argument regarding untimely notice. North American contends lack of notice but does not provide any facts demonstrating prejudice. Both the Policy and Delaware law require North American to demonstrate prejudice before the

---

[36] Mot. at Ex. A (Policy Page 1).
[37] Opp. at ¶ 8; *see also* 2d Am. Compl. at ¶16.
[38] Opp. at ¶¶ 5-6; *see also* 2d Am. Compl. at ¶¶ 13, 19

Court can hold that Plaintiffs are not entitled to reimbursement for fees relating to the Chancery Court Action.

First, the Policy has language that addresses this issue. The Policy specifies that:

If [North American] is prejudiced by the failure of [Plaintiffs] to provide prompt notice, [North American's] liability to [Plaintiffs] under the [Policy] shall be reduced to the extent of the prejudice.[39]

The Policy, therefore, requires North American to demonstrate actual prejudice before there is any reduction in coverage. The Motion, however, contains no facts that provide that North American suffered prejudice due to lack of notice and opportunity to prosecute the Chancery Court Action. Instead, North American emptily states "…even if the matter had been covered and not excepted or excluded from coverage, Plaintiffs' claim is barred by Plaintiffs' lack of proper timely notice."[40] A plain reading of the Policy demonstrates the inaccuracy of North American's contention. What is needed is untimely notice AND prejudice.

Second, Delaware law requires untimely notice and resultant prejudice in order for a policy holder to forfeit coverage.[41] As stated by the Delaware Supreme Court, "we hold that when an insured fails in his burden of proving compliance with the notice condition, before any forfeiture can result, the insurer has the burden of showing that it has thereby been prejudiced."[42] Delaware law recognizes that the purpose of a notice provision is to protect the insurer from any prejudice resulting from untimely, or even lack of, notice.[43] Without prejudice, however, the Court will not declare a forfeiture of the insured's right to coverage.[44]

---

[39] Motion at Ex. A (Policy Page 2 "Notice of Claim to be Given by Insured Claimant").
[40] *Id*. at ¶ 15.
[41] *State Farm Mut. Auto. Ins. Co. v. Johnson*, 320 A.2d 345, 347 (Del. 1974).
[42] *Id*.
[43] *Id*.
[44] *Id*.

Here, the Court does not need to reach the issue of whether Plaintiffs provided timely notice. North American has provided no evidence of prejudice. Under the Policy and Delaware law, the Motion fails with respect to its argument on lack of notice.

## CONCLUSION

For the reasons set forth above, the Motion is **DENIED**.

**IT IS SO ORDERED.**

Dated: May 18, 2020
Wilmington, Delaware

*/s/ Eric M. Davis*
Eric M. Davis, Judge